[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant has moved to modify custody of two minor children, Shantel Kniffen, d.o.b. October 29, 1985 and Christopher Gabriel, d.o.b. December 18, 1990. The plaintiff is the biological father of Christopher, while Shantel's biological father is Thomas Kniffen, the defendant's exhusband.
Joseph Gabriel and Deborah Kniffen never married, but have lived together since September 1985, which was during Deborah's pregnancy with Shantel.
They separated in November 1997 and in July 1998 the plaintiff commenced an action for custody and support of both children.
Following the separation the children had their primary residence with Mr. Gabriel and in July 1998, the parties agreed that the children would continue to reside primarily with Mr. Gabriel. The parties, however, had continuing disagreements over visitation and support issues Multiple motions for contempt and modification were filed and heard. CT Page 10908
In March 1999, the matter was referred to the Family Relations office for a custody evaluation, and that report was completed in November 1999 (Defendant's Exhibit 1). In May 2000, the Court ordered an update of the custody evaluation to reflect the best interests of the minor children. (Defendant's Exhibit 2). This order for an update was in response to the defendant's motion for modification of custody.
An evidentiary hearing was held at which both parties were represented by counsel. The attorney for the minor children (who was also their guardian ad litem) was present. In addition to the testimony of the parties, testimony was provided by Theresa Fredericka Wassenberg (the family relations counselor); Debra Hunchak (a friend of Ms. Kniffen); Barbara Allen (a supervisor at-the nursing home where Ms. Kniffen is employed and also a friend; Lori Gabriel, (the plaintiffs present wife); Karen Reed (a family therapist who counsels Shantel); Ken Jeski (an acquaintance of the plaintiff); and John Nickodemski (a neighbor of the plaintiff).
The Court has carefully examined the testimony and exhibits, the recommendations of the Family Relations Counselor and the children's attorney and G.A.L., as well as the proposals made by the parties.
There is compelling evidence that both children are extremely unhappy with the present custodial arrangement. Mr. Gabriel married Lori Gabriel approximately 1 ½ years ago. She has two sons from a prior marriage — Jason 15 ½ years old and Daniel age 8. They continue to live in the same house that Ms. Kniffen and Mr. Gabriel lived in during their years together. This new family is a substantial change in circumstances in their lives and has caused considerable unhappiness to the children. The following comments by the children are representative of their feelings:
"It is not very good over there"
"I haven't had lunch money in two weeks"
"Dad is never home. He is always out"
"Lori runs the house"
"I always get punished for Danny"
"Everything is our fault"
"Things are never going to change there" CT Page 10909
"I want to stay with my mom"
""Just let me be with my mom"
"Lori told me I was self-centered and a bitch"
"Lori calls Christopher self-centered and a spoiled brat"
"I hate that place" "I hate living there"
"She [Lori] is always mean about mom"
[Lori] says "your mom is a bitch". . . .
"You just don't feel safe in the house"
"It's not our home anymore, not at all"
"We have no privacy"
"Get me out of there"
"I want out of there"
Dad hit him [Chris] and said "you are such a wussy. You are a crybaby"
"When we are at Mom's we get along and we don't fight"
"If I had to live in a box, I would still want to live with Mom."
Shantel, at almost fifteen years of age is entitled to have her feelings considered, although they are not necessarily determinative. While younger, Chris at 10~½ years is still old enough to have his wishes considered as well.
In contrast to the above reports Mr. Gabriel reports an idyllic household. He denies, being physical with the children, and simply does not believe the children would say the things they reportedly said to Dr. Wassenberg.
It is clear to the Court that these children are very unhappy and he is either oblivious to their unhappiness or is so embittered with Ms. Kniffen that his animosity overrides their feelings. (He has been described as having a controlling and angry nature and being without empathy). His parenting is authoritarian and the children are directed rather than consulted. "I don't consult the children about their desire CT Page 10910 to go to camp. I direct this family. I still have a family to run," was a comment he made to Dr. Wassenberg.
There is no disagreement that, regardless of the decision, the children should not be separated. The Court agrees that it would be detrimental to their well being to be separated from each other.
Both Dr. Wassenberg and the court appointed attorney/GAL recommend the mother have primary residence. Dr. Wassenberg is a trained professional and the children's attorney is experienced in family matters. Their opinions and recommendation should also be given serious consideration.
While the parties approach parenting duties differently, it does appear that both would be acceptable, (although not perfect) primary custodians. Unfortunately, there is great animosity between the parties which, at least to date, has made it impossible for them to successfully communicate about the children. And, the Court has some concern that Ms. Kniffen will attempt to influence the children negatively as to their relationship with Mr. Gabriel, or attempt to thwart visitation orders. However, there is evidence that Mr. Gabriel (and Lori, to some extent) have put the children in the middle of their ongoing dispute with Ms. Kniffen. The parties should be aware that such behavior, if continued, could impact their relationships with these children.
It is not without some apprehension that the Court finds from all the evidence that because of the material change in circumstances the emotional well being of the children would be better served if their primary residence is with their mother. She had been their primary care-giver until they separated in 1997, and she appears able and willing to resume that role. Giving consideration to the desire of the children and the reasons expressed, as well as the recommendations of the neutral and experienced counselor and their attorney, the Court concludes that the Motion to Modify Custody should be granted. The following orders are entered.
 1. The parties shall have joint legal custody of the two minor children, primary place of residence with the mother. Mr. Gabriel has been the de facto father to Shantel and the Court believes it is in her best interest that he have joint legal custody in order to facilitate an on-going relationship between the parties. The place of residence shall be changed no later than the second Saturday following the date of this decision.
 2. The matter of child support is to be handled CT Page 10911 through the office of the family support magistrate.
 3. The father shall have visitation on alternating weekends from Friday at 5:00 P.M. to Sunday at 7:00 P.M. He shall have visitation one evening midweek (on Wednesday unless another day is agreed to) from after school to 8:00 P.M. The exchange of children shall be at Ms. Kniffen's residence unless other arrangements are made by agreement.
 4. Legal holidays shall be alternated, except that the mother shall have Christmas Eve to noon on Christmas Day and the father having the remainder of Christmas Day in the odd numbered years, and then alternating the schedule in subsequent years.
5. Mr. Gabriel shall have visitation on his birthday and Father's Day.
6. Ms. Kniffen shall have the children on her birthday and Mother's Day.
 7. Commencing in the summer of 2001, Mr. Gabriel shall have two continuous weeks of visitation. He shall notify Ms. Kniffen in writing on or before June 10th of the dates. Failure to notify in accordance with the order will place the occurrence of the summer vacation at Ms. Kniffen's discretion.
 8. Non-summer school vacations of one week or longer shall be shared equally with the parties alternating the extra day.
 9. The parties shall have free, liberal and unimpeded telephone access to the children.
 10. Neither party shall make derogatory statements or comments about the other in the presence of the children, to the children, or so they can overhear such comments.
 11. Neither party shall discuss any legal proceedings between them with the children.
12. Any existing counseling referrals by the Court remain in place.
 13. Each party shall make every effort to share all medical, educational, cultural enhancement and other CT Page 10912 pertinent information about the children and direct schools, doctors and providers to duplicate reports.
14. Neither party shall smoke cigarettes in the presence of the children.
 15. Neither parent shall attempt to control the other parent's activities or time with the children.
 16. The plaintiff shall provide health insurance for both children as long as each child is eligible under his plan, otherwise the defendant shall provide health insurance as available through her employment. Unreimbursed medical expenses are to be shared equally by the parties.
Klaczak, J.